UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

NICHOLAS MEDLEY,
      Plaintiff,                           CASE NO.:

vs.

ATOMIC TATTOOS HOLDINGS, LLC.
      Defendant.
_____/

## INJUNCTIVE RELIEF SOUGHT

## COMPLAINT

Plaintiff NICHOLAS MEDLEY (Collectively "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against the Defendant, ATOMIC TATTOOS HOLDINGS, LLC. (Hereinafter "Defendant") for injunctive relief Pursuant to the Americans with Disabilities Act, 42 U.S.C §12181, *et seq.* ("ADA"), and allege as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. 12181, *et seq.*, based upon Defendant ATOMIC TATTOO HOLDINGS, LLC's requirement of learning Plaintiff's HIV status before providing service.

2. This Court has original jurisdiction over the action pursuant to 28 U.S.C 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. 12181, *et seq.*, based upon Defendant ATOMIC TATTOO HOLDINGS, LLC's policy of not providing service to customers that are HIV positive.

3. Plaintiff, NICHOLAS MEDLEY is a resident of the State of Florida and the judicial district, is *sui juris*, is disabled as defined by the ADA, 42 U.S.C §12102(2)(B) Plaintiff has been HIV positive since diagnosis in 2010. Plaintiff's access to the services available to the public at the business at 1712 E 7th Avenue, Tampa, FL 33605. County appraisal number A-18-29-19-50N-000069-00007.1 ("The Property"), was denied upon learning of Plaintiff's status as HIV positive.

4. In November of 2018, Plaintiff was a potential customer of the Defendant's services as tattoo provider before denial of service based on HIV status. Plaintiff lives in the near vicinity of the Property.

5. Plaintiff intends to visit the Property within a year or sooner to purchase the services of the tattoo artists. Plaintiff was denied this service upon prior visit in November of 2018 due to his HIV status.

6. In this instance, Plaintiff traveled to the Property as a customer. Upon attempt to purchase services, Plaintiff was handed a release form which asked multiple questions including whether the client is HIV positive.

7. Upon disclosing his HIV positive status, Plaintiff was informed by the staff of the property that it is company policy not to tattoo potential customers that are HIV positive.

8. Defendant, ATOMIC TATTOOS HOLDINGS, LLC, is a Florida Corporation that operates for business purposes on the/property at 1712 E 7th Avenue, Tampa, FL 33605.

## FACTUAL ALLEGATIONS AND CLAIM

9. The Property is a public accommodation and service establishment.

10. Pursuant to the mandates of 42 U.S.C. § 12181(a) on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement requirements of the ADA. 29 C.F.R. Part 36. Public accommodations were required to conform with these regulations by January 26,, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less) 42 U.S.C. §12181, *et seq*. and 28 C.F.R. §36.508(a).

11. Defendant owns and operates multiple locations in multiple states including the location the Plaintiff attended. Their business conducts interstate commerce.

12. Business and Property must be, but is not, in compliance with the ADA. Compliance with the ADA by Defendant is readily achievable.

13. Plaintiff has attempted to and has, to the extent possible, accessed the Business and Property in his capacity as a customer but could not fully do so because of his disabilities due to the policy barriers to access, and ADA violations that exist at the property that preclude and/or limit his access to the goods, services, facilities, privileges, advantages, and/or accommodations offered therein, including those policies and conditions and ADA violations more specifically set forth in this complaint.

14. Plaintiff intends to visit the Business and Property in the near future as a customer in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Business and Property, but will be unable to fully do so because of his disability and the

policy barriers to access and ADA violations that exist at the Property that preclude and/or limit his access to the Business and Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those policies, barriers, and ADA violations more specifically set forth in this complaint.

15. Defendant's business is a Public Accommodation and Service Operated by a Private Entity as defined by 42 U.S.C. §12181(7)(F).

16. Defendant issues all customers a mandatory questionnaire in advance of providing service. This questionnaire inquires as to HIV status in violation of 42 U.S.C. §12182 (b)(2)(A)(i).

17. Defendant's questionnaire asks all perspective customers to initial confirming that they do not have HIV prior to receiving service, showing a clear intent to exclude any customers with HIV from receiving service in violation of the ADA.

18. In November of 2018, Plaintiff entered the Defendant's establishment to purchase a tattoo. Upon entering, Plaintiff was greeted by a tattoo artist who handed him an intake form.

19. Plaintiff was told it was necessary to fill out the intake form in order to receive services of the Defendant's tattoo artists, however it was not necessary for Plaintiff to read the form. He was instructed as to which lines to write his initials and which lines to write is name and address and which line to sign his name. Plaintiff did as the artist instructed.

20. Plaintiff was then escorted to the service area where the tattoo artists give tattoos to the customers. He discussed his desired design with the artists and selected an artist and design for the tattoo he wished to purchase.

21. The defendant's tattoo artist was just about to begin giving the defendant his tattoo when the Defendant thanked the employees for not having an issue with his being HIV positive. It is at this point that all service ceased.

22. The defendant's employees accused the Plaintiff of "Lying on his intake form." Pointing out that Medley had initialed by the section of the form which asked him to write his initials confirming that he is not HIV positive.

23. At this point the Plaintiff was told that he could not receive a tattoo. The Defendant's employees told the Plaintiff that it was store policy not to tattoo HIV positive customers and was told "You could give us AIDS."

24. Plaintiff asked for his intake form to be returned to him. The Defendant's employees provided the document. Please see document attached to this Complaint.

25. Being singled out and refused service due to his disability caused Plaintiff extreme emotional distress. Plaintiff then exited the Property.

26. Defendant violated Plaintiff's rights as defined by 42 U.S.C. §12182 (a) by refusing to provide service based entirely on the Plaintiff's revealing his status as HIV positive.

27. In November of 2018, Defendant violated Plaintiff's rights as defined by 42 U.S.C. §12182 (a) by providing a mandatory questionnaire requesting that the Plaintiff disclose his HIV Status before receiving service.

28. Defendant is the chief provider of service on the Property. Defendant has no legitimate need for information as to the HIV status of the customers.

29.  "A public accommodation shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." Sec 36.301

30. "Section 36.301 also prohibits attempts by a public accommodation to unnecessarily identify the existence of a disability; … or to inquire unnecessarily whether an individual has HIV disease."

31. Defendant is unnecessarily inquired as to whether Plaintiff had HIV disease in clear violation of the ADA.

32. As there is no legitimate need for the information, Defendant inquiring as to the customers' HIV status serves no purpose and gives Defendant the opportunity to discriminate against this extremely vulnerable section of our population. Once the customer discloses HIV status, there are dozens of ways the public accommodation can discriminate against this customer, which would be nearly impossible for the victim to prove. For example the Defendant could quote a higher price to an HIV positive customer than they would to other customers. They could state they lack the ability to help the customer, they can offer appointments that conflict with the customer's schedule, or they can refer the customer to another provider.

33. HIV is a protected Disability under the ADA. People who suffer from HIV are extremely vulnerable to discrimination, as they would have to disclose their

HIV status in order to file a claim for relief due to discrimination. Most victims would prefer to seek another provider of service rather than make their HIV status public.

34. A person's HIV status is an extremely personal piece of medical information. As HIV is incurable, once a person's HIV status is released to the public there is no way to undo the damage.

35. People with HIV have difficulties fighting discrimination in employment, housing, and personal relationships.

36. Defendant's tattoo artists are not doctors, they are not HIPAA certified, they are in no way equipped to properly handle every customers HIV status with the amount of security and care necessary to protect customers from public release of their private medical information.

37. Allowing unnecessary inquiries into HIV creates a public hazard as it facilitates discrimination against the HIV positive community, which leads to fewer people choosing to be tested for HIV.

38. Removal of these conditions is readily achievable by the Defendant and can be carried out without much difficulty or expense.        42 U.S.C. §12182(b)(2)(A)(ii); 42 U.S.C. §12182(b)(2)(A)(iii); §12181(9).

39. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to cease questioning perspective customers as to HIV status. The relief requested serves the public interest, and the benefit to the Plaintiff and the public far outweighs any detriment to the Defendant.

40. Prior to filing suit, Plaintiff's council sent multiple letters through US Mail warning the Defendant of ongoing ADA violations and encouraging the Defendant to contact Plaintiff council in order to avoid the need to file a complaint. Letters were sent to Defendant's corporate office and the location of the violation. Plaintiff council waited over 30 days for Defendant to respond to the letters, no response was received. This gave the Plaintiff no choice but to file suit.

41. Plaintiff has been obliged to retain the undersigned counsel for the filing and prosecution for this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses from Defendants pursuant to 42 U.S.C. §12205 and 12117, and Plaintiff is entitled to attorney's fees, costs, and expenses from Defendant.

42. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the Defendants'

discriminatory business practices and make their services readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue a permanent injunction, enjoining Defendant from continuing its discriminatory practices. Plaintiff respectfully requests the Court issue a permanent injunction, ordering Defendant to cease questioning potential customers as to HIV status as required by the ADA. Plaintiff further requests that this Court issue a permanent injunction enjoining Defendant from refusing service to customers with disabilities including customers suffering from HIV disease, Plaintiff respectfully asks the court to award Plaintiff his reasonable attorney's fees, litigation expenses and costs.

Respectfully submitted this 5th day of August, 2019.

RESPECTFULLY SUBMITTED,

/s/ Andrew Strecker, Esq.
Andrew Strecker, Esq.
Florida Bar No.: 0052900
319 Clematis Street Suite 614
West Palm Beach, FL 33401
P: (561) 360-2470
Andrew@streckerlegal.com
Admin@streckerlegal.com
Attorney for Plaintiff